# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| KULDEEP KAUR, BONNIE MEYER, and JOSETTE BAUER, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br>  v.<br><br>MIDLAND CREDIT MANAGEMENT INC. and MIDLAND FUNDING, LLC,<br><br>    Defendants. | Case No.: 20-cv-839<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Kuldeep Kaur is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Bonnie Meyer is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Josette Bauer is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

7. Defendant Midland Credit Management, Inc. ("MCM") is a foreign corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

8. MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Midland is a debt collector as defined in 15 U.S.C. § 1692a.

10. Defendant Midland Funding, LLC ("Midland Funding") is a limited liability company with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

11. Midland Funding is engaged in the business of collecting debts, in that it purchases and receives assignment of consumer debts that are in default at the time it acquires them.

12. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

13. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Tepper v. Amos Fin., LLC,* 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *Torres v. LVNV Funding LLC*. 2018 U.S. Dist. LEXIS 49885, at *13-15 (N.D. Ill Mar. 27, 2018); *Hordge v. First Nat'l Collection Bureau, Inc.*, 2018 U.S. Dist. LEXIS 132435, at *12-13 (S.D. Tex. Aug. 7, 2018); *Meola v. Asset Recovery Solutions*, 2018 U.S. Dist. LEXIS 139101, at *13-18 (E.D.N.Y. Aug. 15, 2018).

14. The primary purpose of Midland Funding's business, and Midland Funding's principal purpose, is the collection of consumer debts.

15. Midland Funding's website contains an "FAQ" webpage, which states:

**Who is Midland Funding?**

Midland Funding LLC is one of the nation's largest buyers of unpaid debt. For example, we may buy an unpaid credit card account. This happens when a company decides to sell the unpaid account rather than continue collection efforts. Midland Funding LLC purchases accounts with an unpaid balance when:

- An account has gone at least 180 days without making a payment, or
- Someone paid less than the minimum monthly payment for at least 180 days, and
- The original creditor wishes to sell the right to collect on the account balance.

https://www.midlandfunding.com/faqs/.

16. Midland Funding is part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars. The 2013 10-K filing for Midland Funding's parent company, Encore Capital Group, Inc. ("Encore"), states that

3

Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

17. According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S. As Midland paid less than 10 cents on the dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

18. Midland Funding's role generally is to purchase and receive assignment of consumer debts that are in default at the time Midland Funding acquires them. Directly and indirectly through its affiliates, including Encore and MCM, Midland Funding uses instrumentalities of interstate commerce, including the mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts, primarily charged off consumer credit card debts.

19. Neither Midland Funding nor any of its affiliates purchase defaulted consumer debts with the purpose of selling them at a profit. *See, e.g.*, https://www.midlandcreditonline.com/wp-content/uploads/2015/08/Consumer-Bill-of-Rights.pdf (last accessed: February 25, 2019) ("We do not resell accounts to third parties in the ordinary course of our business.").

20. The primary purpose of debt buyers like Midland Funding is debt collection. *See, e.g., Barbato v. Greystone Alliance*, 916 F.3d 260, 267 (3d Cir. 2019) ("So long as a business's *raison d'etre* is obtaining payments on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment."); *Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and

4

… '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

21. Midland Funding uses debt collectors, including MCM, to collect allegedly defaulted debts that have been assigned to Midland Funding. Midland Funding uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

22. Midland Funding by itself and through its attorneys, files thousands of collection lawsuits against consumers in state courts annually. Wisconsin Circuit Court Access (CCAP), for example, shows that Midland Funding filed almost 1,000 small claims lawsuits against Wisconsin consumers in the month of January 2019 alone. Upon information and belief, all or almost all of these actions were filed to collect consumer debt from Wisconsin residents.

23. Upon information and belief, when Midland Funding obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

24. Midland Funding is a debt collector as defined in 15 U.S.C. § 1692a.

25. A company meeting the definition of a "debt collector" under the FDCPA (here, Midland Funding) is vicariously liable for the actions of a second company (such as MCM) collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf) (citing *Pollice*, 225 F.3d at 404-05).

# FACTS

## *Facts Related to Plaintiff Kaur*

26. On or about June 5, 2019, MCM mailed a debt collection letter to Plaintiff Kaur regarding an alleged debt owed to Midland Funding, with an "Original Creditor" listed as "Citibank, N.A." A copy of this letter is attached to this Complaint as Exhibit A.

27. Upon information and belief, the alleged debt referenced in Exhibit A was incurred through the use of a "Sears" store-branded credit card, used exclusively for personal, family, and household purposes.

28. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Kaur inserted by computer.

29. Upon information and belief, Exhibit A is a form debt collection letter, used by MCM to attempt to collect alleged debts.

30. Exhibit A contains the following settlement offers:

> This month we are going to save you money—40% to be exact! This slashes your current debt of $2,310.06 to $1,386.04! All you need to do is visit **MidlandCredit.com** or call **(800) 321-3809**! Click or call today to take advantage of this great offer!

31. Just below the settlement offers Exhibit A states: "Hurry! This offer expires 07-05-2019."

32. The representation that the offer expires July 5, 2019 is plainly false, deceptive, and misleading because, upon information and belief, MCM and/or Midland Funding would have been willing Plaintiff Kaur's alleged debt for 40% of the amount owed, or less, at any time.

33. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading because the same offer is, upon information and belief, available at any time.

34. Such false statements are materially false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

35. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 775-76 (7th Cir. 2007).

36. <u>Exhibit A</u> does not include the safe harbor language prescribed in *Evory*.

37. The deadlines to respond to the settlement offers included in <u>Exhibit A</u> is a sham. Upon information and belief, there is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

38. Plaintiff Kaur was misled and confused by <u>Exhibit A</u>.

39. The unsophisticated consumer would be misled and confused by <u>Exhibit A</u>.

### *Facts Related to Plaintiff Meyer*

40. On or about June 19, 2019, MCM mailed a debt collection letter to Plaintiff Meyer regarding an alleged debt owed to Midland Funding, with an "Original Creditor" listed as "Synchrony Bank." A copy of this letter is attached to this Complaint as <u>Exhibit B</u>.

41. Upon information and belief, the alleged debt referenced in Exhibit B was incurred through the use of a "Walmart" store-branded credit card, used exclusively for personal, family, and household purposes.

42. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Meyer inserted by computer.

43. Upon information and belief, Exhibit B is a form debt collection letter, used by MCM to attempt to collect alleged debts.

44. Exhibit B contains the following settlement offers:

> Congratulations! You have been pre-approved for a discount program to save you money. Call (800) 321-3809 today and put your current debt of $984.99 behind you! Never miss a payment again. Sign up for AutoPay at MidlandCredit.com. Have your MCM account number 8573844061 ready when you call or click.

45. Just below the settlement offers Exhibit B states: "Hurry! This offer expires 07-19-2019."

46. The representation that the offer expires July 19, 2019 is plainly false, deceptive, and misleading because, upon information and belief, MCM and/or Midland Funding would have been willing Plaintiff Meyer's alleged debt for 40% of the total amount owed, or less, at any time.

47. Exhibit B does not include the safe harbor language prescribed in *Evory*.

48. Plaintiff Meyer was misled and confused by Exhibit B.

49. The unsophisticated consumer would be misled and confused by Exhibit B.

*Facts Related to Plaintiff Bauer*

50. On or about September 11, 2019, MCM mailed a debt collection letter to Plaintiff Bauer regarding an alleged debt owed to Midland Funding, with an "Original Creditor" listed as "Citibank, N.A." A copy of this letter is attached to this Complaint as Exhibit C.

8

51. Upon information and belief, the alleged debt referenced in Exhibit C was incurred through the use of a "Best Buy" store-branded credit card, used exclusively for personal, family, and household purposes.

52. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff Bauer inserted by computer.

53. Upon information and belief, Exhibit C is a form debt collection letter, used by MCM to attempt to collect alleged debts.

54. Exhibit C contains the following settlement offers:

> This month we are going to save you money—40% to be exact! This slashes your current debt of $930.73 to $558.44! All you need to do is visit **MidlandCredit.com** or call **(800) 321-3809**! Click or call today to take advantage of this great offer!

55. Just below the settlement offers Exhibit C states: "Hurry! This offer expires 10-11-2019."

56. The representation that the offer expires October 11, 2019 is plainly false, deceptive, and misleading because, upon information and belief, MCM and/or Midland funding would have been willing Plaintiff Bauer's alleged debt for 40% of the total amount owed, or less, at any time.

57. Exhibit C does not include the safe harbor language prescribed in *Evory*.

58. Plaintiff Bauer was misled and confused by Exhibit C.

59. The unsophisticated consumer would be misled and confused by Exhibit C.

### ***The FDCPA***

60. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Messerli & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12,

2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13

(N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

61. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

62. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*,

11

2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

63. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

64. 15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

65. 15 U.S.C. § 1692e(5) specifically prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken."

66. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

## COUNT I – FDCPA

67. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

68. By including a deadline alongside various settlement offers," Exhibits A-C includes representations which are false, deceptive, and misleading because the settlement offers included in the letters would still be available to Plaintiffs after the purported deadline.

69. Exhibits A-C fail to include the safe-harbor language prescribed by the 7th Circuit. *See Evory*, 505 F.3d at 775-76.

70. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).

## CLASS ALLEGATIONS

71. Plaintiffs bring this action on behalf of three classes.

72. Class I consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) between June 4, 2019 and June 4, 2020, inclusive, and (e) not returned by the postal service.

73. Plaintiff Kaur is the proposed class representative of Class I.

74. Class II consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action,

(c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) between June 4, 2019 and June 4, 2020, inclusive, and (e) not returned by the postal service.

75. Plaintiff Meyer is the proposed class representative of Class II.

76. Class III consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit C to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) between June 4, 2019 and June 4, 2020, inclusive, and (e) not returned by the postal service.

77. Plaintiff Bauer is the proposed class representative of Class III.

78. Each class is so numerous that joinder is impracticable.

79. Upon information and belief, there are more than 50 members of each class.

80. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A-C violate the FDCPA.

81. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

82. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

83. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

84. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: June 4, 2019

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com